We have two cases on for argument this morning. The first case is No. 2009-1544, Encyclopedia Britannica v. Alpine. Mr. Rosendahl, you may begin. The District Court in this case invalidated two of Encyclopedia Britannica's patents on grounds that have nothing to do with the merits of the claimed inventions or the scope of the claims, but instead have to do with supposed irregularities far back in the chain of priority during prosecution. If that dramatic result is to stand, it can only be because it is unambiguously commanded by the statute or else necessary to support the purpose underlying the statute, and neither of those conditions is satisfied in this case. The text and the structure of the relevant statute, 35 U.S.C. Section 120 as it existed before it was amended in 1999, undermines rather than supports the District Court's judgment here. Would you agree that under the post-99 statute that the disposition in this case would be correct? Under the post-1999 statute, it would be too late to claim the benefit for this application that had been abandoned, and under those circumstances, the disposition would be correct. Although I would point out that contrary to the position taken by the opposite side, even under the existing statute, there is a window of time in which an application is entitled to a priority date, even though that date has not yet been claimed. There is a four-month window under the existing regulations during which time one can amend the claim to, or amend the application to include the specific reference mandated under the statute. Just before we get into more detail on 120, it seems that Britannica never actually paid the filing fees or sent the oath in for the application at all. So why should it be entitled to any filing date and properly be in the chain when it wasn't ever at any point a proper application because they didn't comply with the rules? Well, it was an application within the meaning of Section 120. If one looks at Section 111 of the statute, that – It didn't – no filing fee was ever paid. Right. So does that mean – just think about this. If we were to adopt a rule that allowed for 120 purposes inventors to basically make a reservation for a future patent by filing application after application with the PTO but not filing any fees, what kind of result would that be? Then later they finally come along and do pay much later but claim priority all the way back because they say these were, in fact, applications under 120. That seems like a bit of a perverse result. Well, there are two responses to that, Judge Warren. The statute says that an application is filed when the specification and drawings are received by the Patent Office. And it says that the application should be accompanied by a filing fee. And it says that the filing fee can be supplied later. So under Section 111 of the statute – Have you supplied the filing fee? The filing fee – there were a number of fees that were paid in the case of – No, the filing fee for the exact application. Has the 955 application filing fee ever to this date been paid? Your Honor, there was a fee of $130 – This is a yes or no. We don't know whether the PTO – what we know is that money was paid to the PTO. We don't know how the PTO allocated the money that was paid. Money was paid for other applications. No, Your Honor. The money was paid in connection with this application, the second application. Your Honor can find that at two places in the Joint Appendix. There was a $130 fee, which is evidenced at Joint Appendix page 1107. And then at Joint Appendix page 1116, we have a $1,320 fee that was paid back in 1994 in connection with this application. And in that same document, the petition at – So suppose that I find that that's not correct, that those fees were not related to or qualify as a filing fee for this application. How do you feel about the principle that I articulated, which is suppose that no fee was ever paid, and there's no dispute over that. Should that reserve a place under 120, and should future applications be allowed to claim priority back when there's no dispute that a fee wasn't paid? Yes, Your Honor. The nonpayment of a fee for an intervening application, which was never prosecuted, should not affect the entitlement of later applications to claim priority through that, because the purpose of the intervening application is to maintain continuity of disclosure through the period that the chain of applications is on file, whereas here, there's nothing done to the application. It is submitted. It's never prosecuted. It's never amended. Nothing happens to it. And then the chain is picked up, and all of the oaths and fees and everything else are supplied. There is no reason why the existence of this sort of intermediate application, which satisfies the continuity of disclosure requirement, should result in the invalidation of a patent. But it was never perfected as a filed application, if no fees were ever filed, right? Well, no, again, I think the statute is clear that an application, that the filing date of the application is the date on which the PTO receives a specification and drawings. And I don't think there's any dispute that that happened on August 31st of 1993 in this case. Now, and as far as we're concerned, that's enough to satisfy both 111, because there's an application under 111, which we admit should be accompanied by a fee, but it doesn't have to have a fee in order to be an application. The statute says you can have an application which consists of the specification and drawings. That application should be accompanied by a fee, but it doesn't cease to be an application if it's not accompanied by a fee. In any event, there were fees. Well, it might not cease to be an application at that point, but is it a perfected file? Is that required? I think the statutes are clear that there have to be submissions that maintain the continuity of disclosure. And there's nothing in the statute, either in 111 or in 120, that requires a filing fee or other fee to be paid in order for the statutory purpose to be served or in order to comply with the text of the statute. However, in this case, if we want to sort of get into the guts of the prosecution, there was a $130 fee that was paid, as indicated at 1107 of the Joint Appendix. There was a $1,320 fee that was paid, as indicated at 1116 of the Joint Appendix. We know that the Patent Office kept those fees. We don't know exactly how those fees were allocated. We know that those fees would be sufficient to cover the fees necessary to... $1,300 at JA 1100. So $1,320 would not be adequate. Well, under the PTO's own regulation governing 120, there's the option of paying either the full filing fee or else what the regulation refers to as a processing and retention fee set forth in Section 1.210. I'm quoting now from 37 CFR 1.78 as it existed in 1993. In order to claim the benefit of an early application, it suffices to pay the processing and retention fee, which is $130, which we believe was paid in this case. But in any event, there was in addition to the actual money that was submitted, there were authorizations given to the PTO to deduct such fees as were necessary in order to prevent the application. The second application from becoming abandoned back in 1994. And that was sufficient to satisfy whatever duty Britannica had to pay fees. And if there were any doubt about that, in the course of subsequent petitions, Britannica has authorized explicitly the Patent Office to take whatever unpaid fees are due. What about the oath or declaration that was never sent? The oath or declaration, again, is something that can be supplied afterwards. The record reflects that the oath or declaration was supplied in the course of prosecuting the third application in the chain. So there was a, and again, the statute doesn't require that there be an oath in order for there to be an application. The regulation requiring the oath in order to grant a filing date, we believe, was contrary to the statute and was not a basis for failing to record the filing date required by law. But the facts of the matter as, and I don't know. How could it be contrary to the statute? The statute, I'm sure you'll acknowledge, doesn't actually speak to an oath or a declaration. So how can a regulation which fills in and says an oath or a declaration is required be contrary to the statute? Well, it says, the statute says the filing date of an application shall be the date on which the specification required drawings are received in the Patent and Trademark Office. And we know that that happened, and we know that those are the required contents by the application. And the statute, Section 111, requires an oath by the applicant prescribed, which can be supplied later. So in this case, what we know is that there were 14 inventors, and I don't know. Some of this information is in the public record from the subsequent PTO proceedings. I don't know how much of it is in the record here. But there were 14 inventors, and one of them died at about the time that this application was being prosecuted. The attorney reports that he perceived the need for extra time in order for the intestacy to be sorted out and to locate the other inventors. The required signatures or declarations were supplied in the course of prosecuting the third application. And then the PTO continued to treat the third application and the subsequent applications all as if they claimed priority properly back to the first application. So there was no reason to think, for anyone involved in the prosecution, to think that there was a problem with the chain of priority during the nine years that the third application was being prosecuted, during the subsequent years that the fourth and fifth applications were being prosecuted. Nobody inside the patent office or outside of it was misled about the claimed priority date for this invention until, during litigation, the accused infringers identified what they perceived to be an irregularity in the claiming of the priority date. Do you think this is just a technicality? We think that – I hesitate to use the word technicality. I would say that this is a perceived irregularity. One could call it a technicality in prosecution. There is no reason, in fairness, why we ought not to have a trial on the merits of these patents. Unless the statute, again, unless the statute or the policy served by the statute has a compelling reason, any ambiguity should be resolved in favor of Britannia. Do you see no value in having applications refer back and give priority dates? Well, the cases that have talked about Section 120 – I'm not asking about cases. I'm asking from a policy standpoint. Don't you see value in that? The policy served by the statute, as explained in the cases that have talked about it, is that the public should be put on notice of the priority date being claimed for an invention, and you should be able to tell, by looking at the face of a patent, what priority date is claimed for that invention. And you should not have to go rummaging through the prosecution history to find out what priority date is being claimed. And that policy is satisfied in this case. I see that I am running into a little bit of trouble. How can it be satisfied if the front page is missing and there is no priority date? No, Your Honor. The patents in suit clearly claim the priority date all the way back to the first application. There is no question that the patents in suit – But there is a missing link, isn't there? In the process? No. The patents in suit clearly claim the proper priority date. No one was misled about the priority date being claimed. So if one didn't do the rummaging, one wouldn't discover the flaw. Exactly. So, at least to the casual observer, it looks like everything is fine, and it takes some degree of hunting to find the problem. Yes, Your Honor. Let me ask you this, and we won't rob you with our questions of all your rebuttal. The problem I have with your policy argument is this. It seems to me that if you are right, then the policy – the reason that we should read the pre-1999 statute a little bit more liberally than the Court did in this case – would suggest that there ought to be some flexibility, whether a prejudice-type rule, or that at least the technicality or irregularity should not be held strictly against the patentee. But it looks to me as if Congress in 1999 largely incorporated just such a rigid regime, because as I read the 1999 amendment, it looks as if that is saying in pretty stark terms that if the chain of references is not there, you lose. So why isn't that a pretty good indication of what Congress thinks the policy ought to be? Well, the fact that Congress had to change the statute – Well, I understand your argument about the change of the statute, and therefore it must have meant something different before. But now focus, if you would, on the question of whether Congress hasn't articulated, whether it's a different rule or not, but for present purposes, hasn't articulated a policy that's contrary to the policy that you've articulated. No. The policy supported by the 1999 amendment is a different one. Or rather, it's a development in facts that requires a different result to support the policy. Before 1999, applications like the second application in this case were kept confidential inside the Patent Office. They were not published. The 1999 amendments were part of the packages of amendments to the Patent Act that were designed to take into account the fact that going forward, patent applications would be published. So the very policy that I articulated, namely, that one ought to be able to tell by looking at a patent publication, or in this case, a patent application publication, what priority date is being claimed for that invention, that published document, is supported after 1999 by requiring one to claim the benefit before the application is published. In 1993, there was no corresponding need to claim the benefit because there was no risk of misleading people because the applications weren't going to be published, and therefore, the change in statute reflects a change in the need for disclosure. Okay. Why don't we—we'll reserve your full three minutes of rebuttal time, and we will hear from, I guess, Mr. Stedman first, and then Ms.— Stedman. Good morning, and may it please the Court. I'm Paul Stedman. I'm representing all of the defendants except Tom Tom in this appeal. I wanted to take my time merely to highlight two things that did not come up during Mr. Rosenthal's ruling. The first one is, as the Court noted, they are making an argument that because the statute was changed slightly in 1999, that entitled had to have a completely different meaning before 1999 than it did after, and that is clearly not supported by anything in the record. In fact, the prosecution—the legislative history of that amendment in 1999 shows that Congress was thinking about only a timing requirement and giving the director of the PTO the ability to set the timing requirement. It allowed the director to set a timing requirement by which that amendment had to be made, that the applicant could no longer wait until the last day that there was an application to amend it. So his argument on that is just wrong. The clear legislative history before and after 1999 shows that Congress's intent was to require that Section 120 be met in order for an application to be entitled to claim priority to an earlier application or that that claim is waived, and under the document of waiver, of course, you can't waive it and then unwaive it later, 9 years later, 10 years later. The other thing that did not come out in Mr. Rosenthal's argument  is the fact that the 955 application was never co-pending with the application that led to the 671 patent. The Patent Act, Section 120, requires that the second application be filed on or before the patenting of the first application, and everyone agrees that the second application was filed or deposited or whatever it was on exactly the same day that the 671 patent issued. Under the Supreme Court's precedent in United States v. Locke, which came down in 1985 after the MPEP was promulgated, the Supreme Court has held that before means the day before something happens. So in that case, it was a mining statute. Yeah, Locke didn't have anything to do with the Patent Act. It did not have to do with the Patent Act, but it did have to do with the interpretation of the word before under federal law. When Congress uses the word before a date, it's setting an arbitrary deadline, and the Supreme Court was very clear about the fact that the deadline is arbitrary and that the courts have no ability to change it. They have no ability to grant a little bit of leeway after, and so if you don't meet your filing requirement before, you can lose substantive rights. Locke is very clear on that, and Locke is uncompromising in its requirement that people meet those arbitrary deadlines, even if they are arbitrary, even if before December 31st sounds like you could file it on December 31st. Before December 31st means December 30th or before. Well, but you're putting an awful lot on the word before and its interpretation in a completely unrelated statute. Suppose in the Patent Act it said before December 31st, and later on it said except for your oath, which could be filed later. Well, then clearly before doesn't mean everything, right? And that would be, I think, his responsive argument to you is the things that you're hanging your hat on are things that the statute otherwise suggested reasonably, in his view, could have been filed later. They did not file anything before the patenting of the 671 patent. It's not just the oath or the fee. There was nothing filed before the patenting of the 671 patent. You're saying there was no application filed before the other one issued? Correct. At all. Oh, this is your same-day argument. Correct. Oh, okay, sorry. I was confused on which argument. The patent issue is at 12.01, okay, and they filed later that day. In fact, they filed their application after the 671 patent issue. You know, is it time-stamped? It doesn't matter because the Patent Office isn't open, so we know they weren't there at 12.01 in the morning to file it. So they were not there. Go ahead. Those were the two points that I wanted to make, Your Honor. If the panel has no further questions for me, I will yield the rest of my time to my co-counsel or to the Court. Very good. We'll hear from Ms. Degnan next. Thank you, Mr. Court. Thank you for your time, Tom. I just wanted to make one comment about the fee, payment of the fee issue, and I think the record is abundantly clear that the fee was certainly not paid. In the record, there's a part where the Patent Office tells you how much money they're going to give you back with your bin and your patent, and the answer was zero. The authorizations that counsel referenced were not general authorizations. They were authorizations that you could take more money if needed in connection with the particular filing they made that day, which was purely an extension of time. It's not the general authorization that he would like it to be. Furthermore, I think it is undisputed that the patentee did not comply with Rule 78A, and unless Rule 78A, which requires the payment of the fee, is inconsistent with the Patent Act and needs to be stricken down as inconsistent with the Patent Act, that really ends the case because they have to comply with both Section 120 and Rule 78A, and they didn't do either. Very well. Very well, Mr. Rosenthal, we'll give you three minutes. Thank you, Your Honor. Responding to Ms. Deggan's point first about the fee authorization, again, this Court's cases have made it clear that the Patent Office doesn't have the authority to add requirements to the statute. So the statute doesn't require the payment of the fee in order for there to be an application for purposes of 111 and 120, and the Patent Office doesn't have the authorization to require that. In any event, as I said, there were at least two actual checks paid into the Patent Office which were retained by the Patent Office, and furthermore, on page 1117 of the Joint Appendix, the Court will find an authorization to take whatever fees were necessary in order to prevent the application from going abandoned. So we don't think that the fee issue is one that would prevent or that would require District Court's judgment here. With regard to the two points that Mr. Stedman made, the same-day argument is one that the Patent Office has made it clear in its own regulations and in the MPEP that filing or that copenancy will be maintained as long as the issuance of the application and the filing of the continuation application happen on the same day. But the PTO doesn't have the authority to modify language of a statute. No, but the PTO has authority to prescribe its own procedures, and the public, this Court has said, are allowed to rely on the descriptions in the MPEP of the procedures that the PTO will follow. So when the PTO tells the world, we will treat your application as copending as long as it arrives on the day that the earlier patent issues, people are allowed to rely on that in determining when to file their applications. In addition, Go ahead. So you think that that would allow them, the PTO, by issuing a regulation saying, you don't actually have to file before, after is just fine, suppose that's what the regulation said, that that would in fact somehow entitle people to a statutory right to a patent, even though it's clearly in conflict with what Congress said? No. If the PTO purported to issue a statute, a regulation in direct conflict with the statute, that would not be the case. So why isn't this one in direct conflict? And why isn't this a substantive rulemaking otherwise, and therefore off limits for the PTO since they don't have substantive rulemaking authority? So it's a two-part question. Well, what the statute says is that it has to be filed, the continuing application has to be filed before the issuance or abandonment of the other application. The PTO doesn't know on any given day when the official gazette is going to be published or when patents are going to be released from the printers. It would be an administrative nightmare of the greatest proportions to have a rule that said we have to keep track on each day of exactly when papers went into the PTO and papers went out of the PTO, and in fact the PTO… Well, in fact they're time-stamped, so they do keep track of the exact time because applications and things to the PTO, aren't they time-stamped? Actually, they're usually date-stamped. Not time-stamped? Unless they arrive by fax, they're just date-stamped, and so there's no way to tell, looking back at the record, exactly when things happened. The other way to think about this, and this is the way that Judge Crabb analyzed the problem in the Western District of Wisconsin in a case that we cite in our brief, before in this case means not later than. So as long as the two things happen on the same day… Well, before can't mean equal to. I mean greater than, less than, or equal to. Math is not that hard. But the point is that this is not… It can't be the same thing. The statute here, unlike the statute in Locke, by the way, doesn't say something has to happen before a date. It says something has to happen before the issuance of the patent. Since we don't know when the patent issues, this is a reasonable regulatory resolution of the issue. If I can get one sentence in on the first point that Mr. Steadman made. We'll give you one sentence. With no semicolons. We are not saying that entitled has a different meaning before and after the amendment. It has the same meaning. I understand that. Actually, in breach of my own injunction, let me ask you one other question on the earlier point. Do you understand the Patent Office's regulation as being an interpretation of the statute as such? And if so, would they be exercising something that can be characterized as Skidmore, to which we would give Skidmore deference? I'm sorry, which regulation are we talking about? The timing regulation. Yes, exactly. But not Chevron, probably? Correct. Skidmore but not Chevron. Thank you. Very well, the case is submitted. We thank all counsel.